**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EVETH ESTRADA,** | : | **CIVIL ACTION NO. 1:03-CV-1787** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **OFFICER LEAR and OFFICER** | : | |
| **FISHER,** | : | |
| | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Presently before the court are defendants' motions (Docs. 13, 24) for

summary judgment on the claims brought by plaintiff, Eveth Estrada ("Estrada"),

under 42 U.S.C. § 1983 based on an alleged violation of her Fourth Amendment

rights.  For the reasons that follow, the motions will be granted in part and denied

in part.

**I.     <u>Statement of Facts</u>**[1]

In the late evening of March 2, 2003, Estrada drove to a social hall in

Lebanon, Pennsylvania, to pick-up her teenage daughters from a birthday party.[2]

(Doc. 12 ¶ 1; Doc. 27 ¶ 1; Doc. 29, Ex. A at 9).  Upon arriving, Estrada found her

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to plaintiffs. See <u>infra</u> Part II.

[2] Like the majority of the facts in this case, the precise time at which plaintiff arrived at the party is unclear.  Plaintiff testified that she arrived between 11:15 p.m. and 11:30 p.m. (Doc. 29, Ex. C at 8); plaintiff's daughter testified that her mother arrived shortly after 1:00 a.m. (Doc. 29, Ex. A at 17); and police reports reflect that the time was closer to 2:00 a.m. (see Doc. 29, Ex. E at 1).

oldest daughter, Tiffany, standing outside of the hall.  (Doc. 29, Ex. C at 30-31).

Walking towards the hall Estrada noticed a man and woman standing nearby

using profanity and threatening Tiffany.  (Doc. 29, Ex. C at 31-33).  Estrada

approached the couple and told them that she did not want any trouble, and asked

that they leave her daughter alone.  (Doc. 29, Ex. C at 32-33).  The man purportedly

began cursing at Estrada and shoved her to the ground.  Tiffany responded by

running to the assailant and jumping on his back.  (Doc. 29, Ex. C at 33-38).  What

occurred next is disputed by the parties.

Estrada testified at her deposition[3] that, as she attempted to get up from the

ground, defendant Officer Lear arrived at the scene.  (Doc. 29, Ex. C at 40-41).

Officer Lear grasped Tiffany around her waist and pulled her off of the assailant's

back, allowing the man to run away.  (Doc. 29, Ex. C at 42-43).  Estrada told Officer

Lear to go after the man, but Lear ignored Estrada and continued to hold Tiffany,

who was struggling to break free.  (Doc. 29, Ex. C at 44-45).  By now a crowed was

gathering and another, unidentified officer arrived.  As Officer Lear began carrying

Tiffany toward his patrol car, Estrada yelled that Tiffany was the victim of a crime

and should be released.  (Doc. 29, Ex. C at 47-49).  According to Estrada, she

reached her arms out towards her daughter but did not make any contact with

either Tiffany or Officer Lear.  (Doc. 29, Ex. C at 52-53).  The unidentified officer

---

[3] The deposition transcripts submitted by counsel for plaintiff were replete
with handwritten comments, underlining, and text obfuscated by what appear to
be post-it notes.  Such notations are distracting and inappropriate, and any future
submission in a similar state will be stricken from the record.

then turned to Estrada and sprayed pepper spray directly into her eyes.  (Doc. 29, Ex. C at 47-49).

Estrada was blinded by the spray, but felt her arms being pulled behind her back and her wrists being handcuffed.  (Doc. 29, Ex. C at 49-50 55).  She felt her body being lifted and escorted towards the police cars.  (Doc. 29, Ex. C at 54-57). Estrada struggled and told the officers to stop, that she did not do anything, and that the assailant had gotten away.  The officers purportedly responded by telling her to "shut the fuck up."  (Doc. 29, Ex. C at 56, 59).  Estrada testified that she suddenly felt a "deep pinch" on the right side of her back.  She could not see what had happened but heard the crowed yelling that something was biting her. (Doc. 29, Ex. C at 57, 59-60, 74, 114).  After being placed in a police car Estrada screamed at the officers to let her go.  The officers allegedly responded by spraying pepper spray directly into her mouth, causing her to choke and vomit in the police car.  (Doc. 29, Ex. C at 57-58, 75-76, 116).

According to Tiffany's deposition testimony, Tiffany saw the assailant push her mother to the ground.   Tiffany then jumped between Estrada and the assailant.  (Doc. 29, Ex. A at 21-22).  The assailant grabbed Tiffany's coat and pulled her to the ground, where he fell on top of her.  (Doc. 29, Ex. A at 22).  Estrada attempted to pull Tiffany and the man apart when a police officer arrived "out of nowhere" and began spraying pepper spray at them.  (Doc. 29, Ex. A at 22).  Tiffany pointed to the now- fleeing assailant and told the officer that the man was getting away.  According to Tiffany, the officers ignored her plea and, while Officer Lear

3

grabbed her, an unidentified officer sprayed pepper spray into her mouth and eyes. (Doc. 29, Ex. A at 23, 27-28).

As Officer Lear led Tiffany to a patrol car, Estrada purportedly grabbed Tiffany's arm and asked the officer why he was taking her daughter, at which point other officers arrested Estrada.  (Doc. 29, Ex. A at 33).  While an unknown officer held onto Estrada, defendant Officer Fisher allegedly held the handcuffs that were around Estrada's wrists and directed a police dog to jump onto and continually bite Estrada for several minutes.  (Doc. 29, Ex. A at 37, 43, 52, 54-55, 69).  Officer Fisher then allegedly opened Estrada's mouth and sprayed mace into it and her eyes before dragging her to a patrol car, where an officer allegedly sprayed the back seat with pepper spray before placing Estrada into it.  (Doc. 29, Ex. A at 34-36, 44-45).

According to Officer Lear, he was patrolling the area when he saw a fight at the social hall.  (Doc. 12, Ex. 3 at 8).  Tiffany was hanging over and striking an unknown man, while Estrada stood nearby watching.  (Doc. 12, Ex. 3 at 10-11). Officer Lear ordered Tiffany and the man to stop fighting several times, and warned them that they would be sprayed with pepper spray if they did not comply. When they did not stop fighting Officer Lear sprayed them.[4]  (Doc. 12, Ex. 3 at 12; (Doc. 29, Ex. E at 5).

_____

[4] Officer Lear testified at his deposition that he gave a one second burst of spray "over the top" of Tiffany and the assailant.  His incident report reflects that it was sprayed directly at them.  (Compare Doc. 12, Ex. 3 at 12 with Doc. 29, Ex. E at 5).

4

The pepper spray caused Tiffany and the man to stop fighting.  Officer Lear testified that he gave pursuit to the assailant when he fled, but returned to the social hall shortly thereafter because he had lost the suspect.  (Doc. 12, Ex. 3 at 12-13).  Officer Lear then ordered Tiffany and Estrada to leave the scene.  According to Lear, Estrada and Tiffany began to walk toward the parking lot of the hall but stopped several times to turn around and shout obscenities at him.  (Doc. 12, Ex. 3 at 22).  Eventually, Officer Lear told Tiffany that she was under arrest for causing a disturbance.  As he reached for her arm Tiffany purportedly struck Lear in the face.

(Doc. 12, Ex. 3 at 23).  As Lear attempted to gain control over Tiffany, Estrada allegedly began hitting Lear and pulling Tiffany away from him.  (Doc. 12, Ex. 3 at 24-25).  The officer ordered Estrada to get back, and told her that she was interfering with an arrest.  (Doc. 12, Ex. 3 at 25).  Officer Lear's incident report reflects that the police dog was then deployed, causing Estrada to release her grip on Tiffany, and allowing Lear to carry Tiffany to the patrol car.  (Doc. 29, Ex. E at 5).

The record reflects that defendant Officer Fisher was the police dog's handler.  (Doc. 29, Ex. B at 41-42).  According to Officer Fisher, upon arriving at the scene he observed several fights occurring within a large crowed outside of the social hall.  (Doc. 29, Ex. B at 79-80).  Officer Fisher took the police dog out of the car for protection and to help disburse the crowed.  (Doc. 29, Ex. B at 81).  Upon approaching the fracas, Officer Fisher observed Estrada fighting with Officer Lear

and attempting to pull Tiffany away.  (Doc. 29, Ex. B at 42, 44, 46, 51, 52).  According to Fisher, Estrada looked over her shoulder at him and, spotting the dog, kicked it in its side.  (Doc. 29, Ex. B at 58, 62).  The dog was deployed, biting Estrada, after which Lear was able to pull the dog back.[5]  (Doc. 29, Ex. B at 48, 62, 66-67, 71).

Estrada was charged with illegally taunting a police animal, riot, failure of disorderly persons to dispense upon official order, resisting arrest, and obstructing administration of law.  (Doc. 12, Ex. 5).  Accepting a plea agreement, Estrada plead guilty to taunting a police animal and was sentenced to eighteen months of probation, and ordered to perform community service and to write letters of apology to the officers.  (Doc. 12, Ex. 5; Doc. 29, Ex. C at 110).

The instant action was commenced in October 2003.  (Doc. 1).  The complaint avers that Officers Lear and Fisher used excessive force on the night in question, in violation fo Estrada's Fourth Amendment rights.  Defendants filed a motion for summary judgment in October 2004 and, following a stay of proceedings to allow for an enlargement of discovery, a renewed motion for summary judgment in March 2005.  (See Docs. 13, 24).  The motions contend that defendants are immune from suit and that, in any event, their actions did not rise to the level of a constitutional violation.  The motions are now ripe for disposition.[6]

---

[5]  It is unclear from the record whether the police dog was intentionally deployed or reacted aggressively as a result of being kicked, or both.  (See Doc. 29, Ex. B at 48, 62, 66-67, 71, 83; Doc. 29, Ex. E at 3).

[6]  The court granted plaintiff an enlargement of time to file a brief in opposition to the instant motions.  (See Doc. 25).  As a result, the instant motions did not become ripe for disposition until May 2005.  (See Doc. 30).

## II.   **Standard of Review**

"Summary judgment serves as a minimal but important hurdle for litigants to overcome before presenting a claim to a jury." Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 314 (M.D. Pa. 2004). Faced with such a motion, the adverse party must produce affirmative evidence, beyond the disputed allegations of the pleadings, in support of the claim. Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Corneal v. Jackson Township, 313 F. Supp. 2d 457, 464 (M.D. Pa. 2003), aff'd, 94 Fed. Appx. 76 (3d Cir. 2004). "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001) (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)). Only if this burden is met can the cause of action proceed. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see Fed. R. Civ. P. 56(c), (e).

## III.   **Discussion**

Section 1983 of Title 42 of the United States Code, and other Reconstruction-era provisions of the Civil Rights Act, 42 U.S.C. §§ 1981-1986, offers private citizens a means to redress violations of federal law by state officials. See id. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id. § 1983.  Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors.  Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To establish a claim under this section, the plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."[7]  Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Satisfaction of these elements, however, does not guarantee recovery. Certain officials, including police officers and other state actors who perform "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999).  This doctrine, known as "qualified immunity," provides not only a defense to liability, but "immunity from suit."  Hunter v. Bryant, 502 U.S. 224, 227 (1991).  Application of this legal doctrine hinges on (1) whether the allegations of the complaint demonstrate "a deprivation of an actual constitutional right" and (2) whether "that right was so clearly established at the time of the alleged violation."  Conn v.

---

[7] Defendants apparently do not dispute that, during the alleged incidents, they were "acting under color of state law."

8

Gabbert, 526 U.S. 286, 290 (1999); Bartholomew v. Pennsylvania, 221 F.3d 425, 428 (3d Cir. 2000).

Although entitlement to immunity may be resolved on the allegations of the complaint, factual issues often compel an examination of the evidentiary record, particularly when immunity is raised for the first time at the summary judgment stage. Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996). "[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff)." Id. In these cases, the court's analysis of the merits of the plaintiff's claims for purposes of summary judgment essentially merges with its analysis of the existence of a deprivation of federal rights for purposes of immunity. See Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Wright v. City of Philadelphia, 409 F.3d 595, 599-601 (3d Cir. 2005); Russoli v. Salisbury Township, 126 F. Supp. 2d 821, 838-41 (E.D. Pa. 2000).

If it is determined that a deprivation of rights may have occurred, the "question [becomes] whether a reasonable public official would know that his or her specific conduct violated clearly established rights." Grant v. City of Pittsburgh, 98 F.3d 116, 121(3d Cir. 1996) (citing Anderson v. Creighton, 483 U.S. 635, 636-37 (1987)). This requires a determination of whether, taking the evidence in the light most favorable to the plaintiff, the defendant should have known that his or her actions contravened statutory or constitutional guarantees. Gruenke, 225 F.3d

at 299-300.  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  <u>Anderson</u>, 483 U.S. at 640 (citation omitted), <u>quoted in</u> <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002).

In the matter *sub judice*, plaintiff contends that defendants used excessive force.  Claims of excessive force under the Fourth and Fourteenth Amendments require the plaintiff to prove that officers used an "unreasonable" level of force in making an arrest.  <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989); <u>Russoli</u>, 126 F. Supp. 2d at 858; <u>see also</u> <u>Abraham v. Raso</u>, 183 F.3d 279, 288 (3d Cir. 1999) ("[E]xcessive force in the course of an arrest is properly analyzed under the Fourth Amendment, not under substantive due process.").  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  <u>Graham</u>, 490 U.S. at 395 (quoting <u>Tennessee v. Garner</u>, 471 U.S. 1, 8 (1985)).  Pertinent factors in this analysis include the number of officers present, the basis of the charges for which the individual was arrested, and the extent of injuries inflicted on the individual.  <u>See</u> <u>id.</u>; <u>Russoli</u>, 126 F. Supp. 2d at 858.

In this case—and as admitted by plaintiff (<u>see</u> Doc. 28 at 3)—there is insufficient evidence to support a claim of excessive force against Officer Lear.  Indeed, the record suggests that Officer Lear was busy attempting to arrest Tiffany

during the time that the events pertaining to Estrada transpired.  Accordingly,

defendant's motion for summary judgment will be granted on these claims.

With regard to Officer Fisher, however, Estrada has presented sufficient

evidence to sustain a claim for excessive force.  According to the testimony of

Estrada and her daughter, Estrada was handcuffed and offering minimal

resistance when Officer Fisher purportedly sprayed her with pepper spray and

directed the police dog to attack.[8]  Although defendants contend that the dog

reacted to being kicked, there is evidence that the dog may have been intentionally

deployed on Estrada.  Further, according to Estrada and her daughter, Estrada

---

[8] Photographs of several gashes in Estrada's back were submitted into evidence.  (See Doc. 29, Ex. D).  Counsel for the parties stipulated during a deposition that the photographs depicted "two different sets of scars," each approximately two inches in length.  (Doc. 29, Ex. C at 105).  "The upper set . . .on the right side of the shoulder . . . is one round scar that . . . starts at the top with a long tearing scar.  And then there is another scar down below that is . . . to the rear of the right breast."  (Doc. 29, Ex. C at 105).

never saw, much less kicked, the animal.[9]  (Doc. 29, Ex. C at 61, 97; Doc. 29, Ex. A at 51).

Viewed in the best light to plaintiff, the alleged conduct states a cause of action for excessive force, and, if proven, Officer Fisher should have recognized that his conduct rose well above the floor of a civil rights violation.  See Priester v. City of Riviera Beach, 208 F.3d 919 (11th Cir 2000) (holding that officer that allows dog to bite unresisting suspect has used excessive force); see also Mason v. Hamilton County, 13 F. Supp. 2d 829, 837 n.4 (S.D. Ind. 1998) ("[O]rdering a dog to attack a suspect who has surrendered, has been handcuffed, and is not resisting

---

[9]  Although defendants argue that Estrada's plea of guilty to the charge of taunting a police animal is conclusive, a guilty plea does not automatically estop a plaintiff from asserting related civil claims.  See Bower v. O'Hara, 759 F.2d 1117, 1125 (3d Cir. 1985) (holding that plea of guilty does not preclude a civil suit because preclusion only applies where event at issue was actually litigated); Anela v. City of Wildwood, 790 F.2d 1063, 1069 (3d Cir. 1986) (holding that trial court erred in estopping plaintiff from asserting Fourth Amendment claim because of guilty plea); Linnen v. Armainis, 991 F.2d 1102 (3d Cir. 1993) (holding that plaintiff's guilty plea had no bearing on the officer's conduct during the arrest).  But see M.B. ex rel TB v. City of Philadelphia, 128 Fed Appx. 217, 227, 2005 WL 752738, at *6-7 (3d cir. 2005) (noting that, under Pennsylvania law, an admission of guilt constitutes an admission of those facts set forth in the indictment).  Further, a conviction for a violation of the statute to which Estrada plead does not require a finding that Estrada kicked the police dog.  See 18 PA. CON. STAT. § 5511.2(a) ("It shall be unlawful for any person to . . . taunt, torment, tease, beat, kick or strike a police animal."); see also 18B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4474.1 (3d ed. 2002) ("The plea-based conviction does not actually adjudicate the fact issues necessary to establish guilt, and accordingly should not support issue preclusion.").  In any event, and in the best light to plaintiff, a reasonable jury could find Estrada's rights violated—even had she kicked the dog—if it were proven that the officers did indeed have Estrada handcuffed and physically restrained at the time that the dog was purportedly ordered to attack.

police authority would surely be unreasonable as a matter of law . . . ."); <u>Luce v. Hayden</u>, 598 F. Supp. 1101, 1104 (D. Me. 1984) (stating that ordering a dog to attack a suspect who had surrendered to police would "shock the conscience"). Accordingly, defendants' motion for summary judgment will be denied as to defendant Officer Fisher.

**IV.**   **Conclusion**

Viewing the record in the light most favorable to plaintiff, there exists insufficient evidence to support a claim against defendant Officer Lear, and as such the claims against Officer Lear will be dismissed.  However, plaintiff has set forth a *prima facie* excessive force claim against defendant Officer Fisher, and averred sufficient facts and circumstances which, if proven, would demonstrate a violation of a clearly established constitutional right.  As such, qualified immunity will not shield Officer Fisher from suit, and the motion for summary judgment will be denied as to that defendant.

An appropriate order will issue.


　S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Date:        July 6, 2005

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EVETH ESTRADA, | : | CIVIL ACTION NO. 1:03-CV-1787 |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| OFFICER LEAR and OFFICER FISHER, | : | |
| | : | |
| Defendants | : | |

## ORDER

AND NOW, this 6th day of July, 2005, upon consideration of the motions

(Docs. 13, 24) for summary judgment, and for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that:

1. The motions (Docs. 13, 24) are GRANTED with respect to plaintiff's claims against defendant Officer Lear.  The Clerk of Court is directed to defer the entry of judgment until the conclusion of this case.

2. The motions (Docs. 13, 24) are otherwise DENIED.

3. The pre-trial and trial schedule in the above-captioned action is revised as follows:

   a. Motions in limine and supporting briefs shall be filed on or before August 12, 2005.

   b. Pretrial memoranda shall be filed on or before 12:00 p.m. on August 18, 2005.

   c. The final pre-trial conference shall be held at 2:30 p.m. on Thursday, August 25, 2005, in Courtroom No. 2, Ninth Floor, Federal Building, 228 Walnut Street, Harrisburg, Pennsylvania.

     d.     Jury selection in this matter shall commence at 9:30 a.m. on Tuesday, September 6, 2005, in Courtroom No. 2, Ninth Floor, Federal Building, 228 Walnut Street, Harrisburg, Pennsylvania.

4.     All other pretrial instructions set forth in prior case management orders shall remain in effect.


         S/ Christopher C. Conner
         CHRISTOPHER C. CONNER
         United States District Judge